```
               IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff,** | |
| v. | **Crim No.** 11-229 (FAB) |
| ALEXIS NEGRÓN-CRUZ, | |
| **Defendant.** | |

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is defendant Alexis Negrón-Cruz ("Negrón")'s motion to stay an order of commitment. (Docket No. 283.) For the reasons set forth below, Negrón's motion is **DENIED**.

**I.   Background**

Negrón accessed the internet on his personal computer, downloading several images of minors engaged in sexually explicit conduct. (Docket No. 114 at p. 12.) On April 3, 2013, he pled guilty to possessing child pornography in violation of 18 U.S.C. section 2252(a)(4)(B). (Docket No. 112.) The Court imposed a sentence of 120 months imprisonment, and a 25-year term of supervised release. (Docket No. 143.)

Among other things, the conditions of supervised release required Negrón to: (1) "undergo a sex-offense-specific evaluation or participate in a sex offender treatment or mental health

treatment program," (2) "submit to initial polygraph testing and subsequent maintenance testing at intervals at the discretion of the probation officer," and (3) "consent to the installation of systems that will enable the probation officer or his or her designee to monitor and filter computer use." Id. at pp. 4—5. Negrón immediately appealed, challenging the conditions of supervised release. (Docket No. 144.) Dismissing this action, the First Circuit Court of Appeals held that Negrón "waived his right to appeal as part of his plea agreement." United States v. Negrón, Case No. 14-1044 (1st Cir. Aug. 21, 2015) (Judgment).

A month before Negrón's release date, the United States Probation Office ("U.S.P.O.") conducted an initial interview to review the conditions of release. (Docket No. 182 at p. 1.) Negrón exhibited "resistance and hostility towards collaborating with the prelease process[, refusing] to follow the supervised release conditions." Id. Undeterred, the U.S.P.O. continued to assist Negrón. In fact, United States Probation Officer Guillermo Arbona-Fernández offered "to transfer the case" after Negrón made "disrespectful and threatening remarks" during the interview and in a *pro se* informative motion. Id.; see Docket No. 185. The U.S.P.O. transferred Negrón to United States Probation Officer Luz Enid Aponte-Ortiz ("Aponte").

The Bureau of Prisons ("B.O.P.") released Negrón from custody on December 17, 2019. (Docket No. 199 at p. 1.) He subsequently failed to participate in mental health treatment and accessed the internet without the appropriate oversight. Id. Probation officer Aponte moved for a show cause hearing, requiring Negrón to establish why his supervised release should not be revoked. Id. Magistrate Judge Bruce M. McGiverin held Aponte's motion in abeyance after Negrón assured the Court, the United States Attorney's Office, and the U.S.P.O. that he would comply with the conditions of supervised release. (Docket No. 212.)

Negrón's representations rang hollow. He continued to violate the conditions of supervised release and displayed problematic behavior. For instance, Negrón insisted on identifying himself as a "sexual predator" on employment applications. (Docket No. 215.) The U.S.P.O. urged Negrón to be candid with prospective employers, but to rephrase this description of the child pornography conviction. Id.

The Carib Transitional Program ("Carib") provided Negrón with temporary housing. Id. at p. 4. Staff members searched his room, confiscating three cellular phones with access to the internet. Id. He acquired WIFI signal from Carib without the program's authorization. Id. What is more, Negrón refused to answer questions regarding his past sexual history during a Court mandated polygraph examination. (Docket No. 226 at p. 2.)

Clinical psychologist Vanessa Berríos ("Berríos") evaluated Negrón on July 30, 2020. (Docket No. 4.) The evaluation revealed that Negrón suffers from "paranoia and antisocial behavior." Id. Berríos recommended that he "should be urgently evaluated by a psychiatrist due to his emotional instability and mental health symptoms." (Docket No. 251, Ex. 1.) Moreover, Negrón posed a "danger to the community" and required in-patient treatment. Id. at p. 1. Ultimately, the U.S.P.O. requested that the Court issue a warrant for Negrón's arrest, citing "his constant unwillingness to comply with his supervising conditions." (Docket No. 218 at p. 4.) Law enforcement agents arrested Negrón on July 31, 2020. (Docket No. 222.)

Magistrate Judge McGiverin ordered that Negrón remain in custody pending the final revocation hearing. Id. In the interim, Negrón requested that the U.S.P.O. reassign his case to a third probation officer. (Docket No. 234 at p. 1.) The Court denied this motion. (Docket No. 236.) The United States requested a psychiatric examination for Negrón pursuant to 18 U.S.C. sections 4241(a) *et al*. ("section 4142"). (Docket No. 251.)

The virtual revocation hearing occurred on December 11, 2020. (Docket No. 258.) Rather than revoke Negrón's supervised release, the Court issued the following order:

> [Pursuant] to the provisions of Section 4142(a) and (b) 4242(a) and 4247 of Title 18, United States Code, that a psychiatric examination, evaluation and treatment of Alexis D. Negrón-Cruz be performed. The United States Marshals Office for this district shall make the necessary arrangements to transfer the defendant to Butner Federal Correctional Facility, North Carolina, in order to determine defendant's mental competency to comply with the supervise release term conditions, that is, whether he is able to understand the proceedings against him, to consult with his counsel and aid in his defense and in order to treat the defendant as deemed necessary by the psychiatrists at Butner Correctional Institution. The Butner Corrections Institution or the Federal Medical Center shall report in writing to this Court, [the United States, and defense counsel] the results of said mental examination . . . Defendant shall submit himself to such examination and no statement made by him in the course of the examination to determine his mental condition shall be admitted in evidence against him on the issue of guilty or innocence in any criminal proceeding.

(Docket No. 261.) Negrón filed a *pro se* notice of appeal on January 21, 2021. United States v. Negrón, Case No. 21-1077 (1st Cir. Feb. 26, 2021) (Notice of Appeal).[1] He requests that the court stay the psychiatric examination. (Docket No. 283.)

## II. Motion to Stay Standard

A stay pending an appeal is "not a matter of right, even if irreparable injury might otherwise result." Vaquería Tres Monjitas, Inc. v. Comas, 5 F. Supp. 3d 179, 181 (D.P.R. 2014) (quoting Virginian R.C. v. United States, 272 U.S. 658, 672 (1926)) (Domínguez, J.). The following factors govern the Court's

---

[1] Negrón failed to file a notice of appeal within the applicable timeframe to do so. The Court granted Negrón's motion to enlarge the time for filing an appeal, however, permitting him to seek judicial relief before the First Circuit Court of Appeals.

analysis: "(1) Whether the stay applicant has made a strong showing that it is likely to succeed on the merits, (3) whether the applicant will be irreparably harmed absent a stay, (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies." Common Cause Rhode Island v. Gorbea, 970 F.3d 11, 14 (1st Cir. 2020) (quoting Nken v. Holder, 556 U.S. 418, 426 (2009)).

### III. Discussion

Negrón moves to stay the psychiatric examination because, he argues, the Court's order "was issued in violation of all minimal due process, [and is] unsupported by any standard." (Docket No. 283 at p. 6.) The Court disagrees.

#### A. The Insanity Defense Reform Act

Congress amended the Insanity Defense Reform Act in 1984 to restructure the "procedure to be followed by federal courts with respect to offenders suffering from a mental disease or defect." United States v. Arenburg, 605 F.3d 164, 169 n.2 (2d Cir. 2010) (internal citation and quotation omitted). This legislation includes section 4142, providing that:

> [At] any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant or attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is a reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetency to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in this defense.

18 U.S.C. § 4241(a). The Court may order defendants to undergo a psychiatric examination before the competency hearing. 18 U.S.C. § 4241(b). Essentially, section 4241 "guards against" the conviction (and revocation of supervised release) of legally incompetent individuals. United States v. Malmstrom, 967 F.3d 1, 4 (1st Cir. 2020); see United States v. Kenny, 756 F.3d 36, 43 (1st Cir. 2014) (holding that a "criminal defendant may not be tried unless he is competent, and he may not . . . plead guilty unless he does so 'competently and intelligently.'") (citation and quotation omitted).

### B. Negrón Will Likely Not Prevail

Negrón's appeal grossly misconstrues the Court's order for three reasons. First, Negrón asserts that the Court required that "[he] be committed indefinitely when the statute only permits up to 30 days." (Docket No. 283 at p. 3.) A cursory reading of the order negates this proposition. Although the order does not specify the precise date by which the psychiatric examination must

occur, the Court referred specifically to 18 U.S.C. section 4247. (Docket No. 261 at p. 1.) Pursuant to this provision, the Court "may commit the person to be examined for a reasonable period, but not to exceed thirty days . . . to the custody of the Attorney General for placement in a suitable facility." 18 U.S.C. § 4247(b). The director of the facility responsible for conducting the examination "may apply for a reasonable extension, but not to exceed fifteen days under section 4241 . . . upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant." Id. Accordingly, Negrón's argument that the Court ordered an indefinite term of confinement is meritless and factually inaccurate.

Second, Negrón contends that the Court erred by selecting a "facility in North Carolina without finding that a suitable facility in Puerto Rico, or closer to Puerto Rico, was not practical." (Docket No. 283 at p. 5.) Section 4247 provides that, "[u]nless impracticable, the psychiatric or psychological examination shall be conducted in the suitable facility closest to the court." 18 U.S.C. § 4247(b). An examination within this jurisdiction is not feasible, however, because of Negrón's behavior. He hid multiple phones and accessed the internet in violation of the rules and regulations at the Carib Transitional Program, demonstrating that he is either incapable or unwilling at this time to reside at an out-patient housing facility. Also,

Berrios recommended explicitly that Negrón receive in-patient mental health treatment.  (Docket No. 251, Ex. 1.)  Accordingly, Negrón will submit to a psychiatric examination while in the custody of the Attorney General.

The Insanity Defense Reform Act authorizes the Attorney General, not the Court, to designate Negrón to a suitable facility for the examination.  See, e.g., United States v. Quintero, 995 F.3d 1044 (9th Cir. 2021) (holding that the Attorney General has the discretion to select a suitable facility, including the authority to "contract with a State, a political subdivision, a locality, or private agency for the confinement, hospitalization, care, or treatment of, or the provision of services to, a person committed" pursuant to section 4241) (citing 18 U.S.C. § 4247(i)).[2]  The Metropolitan Detention Center ("MDC") is the only federal detention center in Puerto Rico, housing "pretrial detainees and holdover inmates as a service to the U.S. District Court and the U.S. Marshals Service of the District of Puerto Rico and U.S. Virgin Islands." Robinson v. Ledesma, Case No. 06-2011, 2008 U.S. Dist. LEXIS 96969 *1—2 (D.P.R. Jan. 8, 2008) (Vélez-Rivé, Mag. J.).  The medical services offered by MDC are limited. Butner

---

[2] The commitment order does impose any limitation on the Attorney General to designate the facility where Negrón will undergo an examination.  The Court suggested the Butner Federal Correctional Facility because, based on the Court's experience, defendants from Puerto Rico frequently receive mental health treatment at this location.

Federal Correctional Facility is "known for [their] medical facilities" and their expertise in performing evaluations pursuant to section 4241.  United States v. Madera-Rivera, 898 F.3d 110, 113 (1st Cir. 2018).  Negrón has proffered no reason for the Court to question or undermine the Attorney General's determination that Butner Federal Correctional Facility is the closest, practical venue for the examination.  Consequently, Negrón's argument regarding the location of the examination is unavailing.

Third, Negrón contends that the order violates due process and "his conditional liberty interest in avoiding the forced administration of drugs absent any important governmental interest and with the single purpose of making him comply with supervised release conditions."  (Docket No. 283 at p. 5) (citing Sell v. United States, 539 U.S. 166 (2003).  This argument is unfounded.

As a preliminary matter, Negrón conflates "treatment" and "treat" with the administration of prescription drugs.  Treatment may include counseling and other therapeutic options.  He cites Sell, a case pertaining to the involuntary administration of antipsychotic medication to, *inter alia*, ensure that the defendant would be "competent for trial."  539 U.S. at 171—72.  The Court is unaware of either any administration of drugs against Negrón's will, or of any plans to do so.

The order twice refers to "treatment."  (Docket No. 251.)  First, the order merely states that a "psychiatric examination,

evaluation and **treatment** of Alexis D. Negrón-Cruz [shall] be performed" pursuant to sections 4241 and 4247. Id. (emphasis added). Second, the order provides that the psychiatric examination is necessary to "determine [Negrón's] mental competency to comply with the supervised release term conditions, that is, whether he is able to understand the proceedings against him, to consult with his counsel and aid in his defense and in order to **treat** defendant as deemed necessary by the psychiatrists at Butner Correctional Institution." Id. (emphasis added). Accordingly, the order conditions the administration of "treatment" on the Insanity Defense Reform Act and the medical determinations rendered by qualified psychiatrists. After the examination, Negrón "shall be represented by counsel. . . afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses" at the competency hearing. Id. He may object to, or challenge, any diagnosis or recommended treatment plan at that time.

      Negrón presumes that the psychiatric examination is a means to compel compliance with the conditions of supervised release. (Docket No. 283 at p. 6.) His subjective beliefs are both incorrect and irrelevant. This examination will establish whether he "understand[s] the nature and consequences of" the revocation proceeding and is "[able] to assist properly in his defense." 18

U.S.C. § 4241.  When "confronted with a question of legal competency, [courts] must tread carefully."  <u>United States v. Nygren</u>, 933 F.3d 76, 85 (1st Cir. 2019).  This Court issued the order after Negrón littered the docket with nonsensical motions for over a year, a psychologist recommended an in-patient psychiatric examination, Negrón addressed the Court at the revocation hearing, and the United States moved for a psychiatric examination pursuant to section 4241.  The record and reasons articulated in this Opinion and Order compelled the Court to issue the commitment order.  This decision is not an arbitrary exercise of judicial discretion.  <u>Contra</u> <u>United States v. Neal</u>, 679 F.3d 737, 742 (8th Cir. 2012) (reversing a section 4241 order because "the district court did not conduct a hearing, require the government to present evidence to justify the inpatient commitment, seriously consider the defendant's alternative request for an outpatient evaluation, or make findings of fact concerning the need for commitment").  There is no cabal to coerce Negrón to comply with the conditions of supervised release, only an attempt determine whether he is competent in accordance with the Insanity Defense Reform Act.  Because Negrón will not likely succeed on the merits, the motion to stay is denied.

**V.   Conclusion**

For the reasons set forth above, Negrón's motion to stay is **DENIED**. (Docket No. 283.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 7, 2021.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE
